UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JENNIFER BENDICKSON,                          Case No. 16-CV-0313 (PJS/BRT)

                    Plaintiff,

v.                                                    ORDER

MESSERLI & KRAMER, P.A.,

                    Defendant.

Bennett Hartz, LAW OFFICE OF BENNETT HARTZ, for plaintiff.

Derrick N. Weber and Sonja Beddow, MESSERLI & KRAMER, P.A., for
defendant.

This matter is before the Court on the motion of defendant Messerli & Kramer

P.A. ("Messerli") to sanction plaintiff Jennifer Bendickson for refusing to voluntarily

dismiss her complaint within six days after receiving a letter from Messerli explaining

why Messerli thought the complaint was meritless.  Messerli asks the Court to order

Bendickson to pay its attorney's fees, the lion's share of which were incurred in

bringing this motion for sanctions.  Because it was the filing of this motion—and not

Bendickson's refusal to dismiss her complaint—that was "unreasonabl[e] and

vexatious[]," 28 U.S.C. § 1927, the Court denies the motion.

## I.  BACKGROUND

Bendickson sued Messerli in state court for Messerli's conduct in collecting a debt from her.  According to Bendickson's complaint, Messerli demanded that Bendickson "pre-authorize [Messerli] to make regular, automatic transfers each month from her bank account until the debts were paid in full."  Compl. ¶ 7.  The complaint further alleged that, in response to Messerli's demand, Bendickson gave Messerli her bank-account number and routing information, Compl. ¶ 8, and Messerli used that information to make automatic monthly withdrawals from her bank account, Compl. ¶ 9.  Bendickson claimed that, because she gave Messerli this information in a telephone conversation and not in writing, Messerli violated the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 et seq.  EFTA provides that "'[a] preauthorization electronic fund transfer from a consumer's account may be authorized by the consumer *only in writing*, and a copy of such authorization shall be provided to the consumer when made.'"  Compl. ¶ 12 (quoting 15 U.S.C. § 1693e(a)) (emphasis added).

Bendickson explicitly acknowledged in her complaint that EFTA defined "'electronic fund transfer'" to exclude "'a transaction originated by check.'"  Compl. ¶ 18 (quoting 15 U.S.C. § 1693a(7)).  She further acknowledged that, rather than simply transfer funds from Bendickson's account to its bank account, Messerli used the information that it had obtained from Bendickson to create "checks" from Bendickson

to Messerli.  Compl. ¶ 16.  Bendickson did not see those checks before they were

deposited; rather, Messerli printed out the checks in its office (including the typed

"signatures" of Bendickson), and then Messerli endorsed the checks and deposited

them into its bank account.  Compl. ¶¶ 16-20, Ex. B.  Bendickson alleged that "[t]hese

'checks' were a transparent attempt by [Messerli] to circumvent the requirements of

§ 1693e(a) by attempting to exempt the transactions from the definition of 'electronic

fund transfer,' thus exempting [Messerli] from requiring a consumer's written

permission under § 1693e(a)."  Compl. ¶ 17.

Bendickson alleged that, in addition to violating the EFTA, Messerli had violated

the Fair Debt Collection Practices Act ("FDCPA") by "falsely representing that it could

receive preauthorized electronic fund transfers from [Bendickson] without her written

authorization."  Compl. ¶ 25.  Specifically, Bendickson alleged that Messerli violated

§ 807(2)(B) of the FDCPA, which prohibits a debt collector from using "any false,

deceptive, or misleading representation or means in connection with the collection of

any debt," including "[t]he false representation of . . . any services rendered or

compensation which may be lawfully received by any debt collector for the collection of

a debt."  15 U.S.C. § 1692e(2)(B).

On January 25, 2016, Bendickson served—but did not file—her summons and

complaint.  ECF No. 7 ¶ 6.  (In Minnesota, "[a] civil action is commenced against each

defendant . . . when the summons is served upon that defendant . . . ."  Minn. R. Civ.

P. 3.01(a).)  Three days later—on January 28, 2016—attorney Derrick N. Weber

responded on Messerli's behalf.  In a letter addressed to Bennett Hartz (Bendickson's

attorney), Weber warned that, if Bendickson did not dismiss her action by February 3,

2016, Messerli would remove the case to federal court, move to dismiss her complaint,

and seek sanctions against her.  ECF No. 7-1 at 1.  The letter did not give any reason for

choosing February 3 as the deadline.

Attached to Weber's letter was a document styled "Notice of Intent to Seek

Sanctions."  ECF No. 7-1 at 2  (hereinafter "Notice").  The Notice did not really dispute

any of the facts alleged in Bendickson's complaint, but argued, in essence, that Messerli

was not liable to Bendickson for two reasons:

First, Messerli argued that it did not need written authorization from Bendickson

because EFTA excludes from the definition of "electronic fund transfer" any transfer of

funds that is "originated by check" and the transactions in which it engaged with

Bendickson fell within this exclusion.  Messerli cited one case in support of its

argument:  *Ferrier v. Gordon & Wong Law Grp., P.C.*, No. 2:14-CV-356-GEB-DAD, 2015

WL 429737 (E.D. Cal. Feb. 2, 2015).  According to Messerli, *Ferrier* "ruled that check-by-

phone paper checks are not EFTs."  ECF No. 7-1 at 2.

Second, Messerli argued that, even if it *did* need written authorization from Bendickson, (1) she authorized the transfers in a telephone conversation; (2) Messerli recorded that telephone conversation; and (3) such a recording suffices to meet the "written authorization" requirement of 15 U.S.C. § 1693e(a).  In support of its argument, Messerli cited no statutes, regulations, or judicial opinions, but only a "compliance bulletin" issued by the Consumer Financial Protection Bureau ("CFPB").  *See* Consumer Fin. Prot. Bureau, CFPB Compliance Bulletin 2015-06, *Requirements for Consumer Authorizations for Preauthorized Electronic Fund Transfers* (2015) (hereinafter "Bulletin").

The Notice concluded by threatening to seek sanctions against Bendickson and Hartz under multiple provisions of federal and state law.

On Wednesday, February 3—the day after he received Weber's letter and the Notice—Hartz responded in a polite email to Weber.  ECF No. 7-2 at 3.  Hartz asked Weber to email copies of attachments to which the Notice referred, as well as to provide "a copy of the recording made when my client supposedly agreed to these payments." ECF No. 7-2 at 3.  Hartz also asked that the February 3 deadline be extended to Monday, February 8, as he would be out of the office until then, and as he and his client could not make a decision about whether to dismiss the lawsuit without reviewing the attachments and the recording.  ECF No. 7-2 at 3.

Weber responded by email on the same day.  ECF No. 7-2 at 2-3.  Weber forwarded the missing attachments, but refused to provide a copy of the recording, and said nothing about the request to postpone the deadline until February 8.  Instead, Weber lectured Hartz about his obligations under Minn. R. Civ. P. 11.  ECF No. 7-2 at 2-3.

Later that same day, Hartz responded to Weber.  ECF No. 7-2 at 2.  Hartz explained that, while he had heard his client's version of her conversation with Messerli, the recording was "much better evidence of what took place than my client's memory."  ECF No. 7-2 at 2.  Hartz again asked that he be allowed to listen to the recording and consult with his client before being forced to decide whether to dismiss her lawsuit.  ECF No. 7-2 at 2.

Weber fired back by email on February 5.  He told Hartz that "[t]he call recording is not necessary for you to dismiss this case nor are you entitled to it"—because, Weber said, "[y]ou are not entitled to conduct discovery at this stage in the litigation."  ECF No. 7-2 at 1.  This was a red herring, as Hartz had never claimed that he was "entitled" to the recording or any other discovery.  Weber also asserted that "[t]he call recording has no bearing on the fact that this claim lacks merit and must be dismissed," ECF No. 7-2 at 1—which was not true, given that the existence of the recording was crucial to one of the two main arguments that Weber had made in the

Notice.  And Weber reminded Hartz of the *Ferrier* decision—which, Weber claimed,

"specifically denied the claim that you have asserted."  ECF No. 7-2 at 1.  This, too, was

not true, for the reasons explained below.

On February 8, Hartz returned to the office and responded to Weber's email by

stating the obvious:

> I hope to respond to your demand to dismiss the case, but
> until I can hear the call recording, I cannot fully advise my
> client o[n] this.  Crucially, the call will show whether my
> client agreed to a check-by-phone payment.  If she did not,
> Messerli & Kramer's transaction was necessarily an EFT,
> whether they call it one or not.  I know that we are not
> entitled to discover[y] yet, but I had hoped, as a professional
> courtesy, that we might exchange vital documents and
> evidence to spare us and the court a prolonged litigation if
> unnecessary.  We do have a duty under MCRP 3.2 to
> expedite litigation whenever possible, and I do not believe it
> hurts your client's interest to provide the recording.

ECF 7-2 at 1.

At this point, Messerli had more than two weeks remaining to file a notice of

removal to federal court.  Any reasonable litigator who was confident in his position

and who did not want to waste the time of the court would have provided a copy of the

recording to Hartz, given him a few days to listen to it and discuss it with his client, and

then, if Bendickson did not dismiss the lawsuit, remove the case to federal court.  Weber

instead raced to the courthouse—two courthouses, in fact.  On February 8 (the very day

that he received Hartz's email), Weber first filed the action in state court (needlessly[1]

incurring a filing fee of $324), and then removed the action to federal court (paying a

filing fee of $400).  Three days later, Bendickson voluntarily dismissed her case.

Not content to leave well enough alone, Messerli filed the present motion asking

the Court to sanction Bendickson by ordering her to pay most of the attorney's fees that

Messerli has incurred in this matter.  The vast majority of the fees sought by Messerli

were incurred in bringing this motion for sanctions.

## II.  ANALYSIS

Messerli seeks sanctions under 28 U.S.C. § 1927, 15 U.S.C. § 1693m(f), 15 U.S.C.

§ 1692k(a)(3), and the Court's inherent authority.

Under § 1927, a court may award sanctions against an attorney who "multiplies

the proceedings in any case unreasonably and vexatiously . . . ."  The Eighth Circuit has

explained that § 1927 "permits sanctions when an attorney's conduct, viewed

objectively, manifests either intentional or reckless disregard of the attorney's duties to

---

[1]*See Lyon Fin. Servs., Inc. v. Greater Calvary Bible Church*, No. 09-CV-3734
(PJS/AJB), 2010 WL 1389611, at *2 (D. Minn. Mar. 31, 2010) ("[T]he Court is not aware of
any reason why a Minnesota state action that has been commenced through service—
but not yet filed—could not be removed.  Certainly nothing in [28 U.S.C.] § 1446
dictates such a result.  To the contrary, § 1446(a) requires that a removing defendant file
with its notice of removal a copy of all process, pleadings, and orders that have been
"*served* upon such defendant"; it says nothing about filing.")

the court." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (citation and internal quotation marks omitted).  Sections 1693m(f) and 1692k(a) set similarly high bars; § 1693m(f) directs the Court to award a defendant reasonable attorney's fees and costs after an unsuccessful action if the action "was brought in bad faith or for purposes of harassment," and § 1692k(a)(3) allows the Court to award fees and costs for an action "brought in bad faith and for the purpose of harassment . . . ."

No doubt because it recognizes that a litigant "cannot be sanctioned under § 1927 simply for filing a frivolous complaint," *Welk v. GMAC Mortgage, LLC*, 850 F. Supp. 2d 976, 1005 (D. Minn. 2012) (collecting cases), Messerli stresses several times in its briefs that its "request for its attorneys' fees is not based upon Plaintiff's commencement of a frivolous suit, but rather Plaintiff's refusal to dismiss the frivolous claim."  ECF No. 12 at 2.  In other words, Messerli argues that because Bendickson did not dismiss her lawsuit within *six days* of receiving Weber's letter and the Notice, Bendickson should be sanctioned.  Messerli's argument is frivolous.

As an initial matter, the Court has difficulty imagining circumstances in which it would sanction a plaintiff's attorney for not dropping everything and deciding within *six days* whether to dismiss a lawsuit.  Attorneys are often busy; sometimes they are in trial, sometimes they are taking depositions, sometimes they are rushing to meet deadlines for filing papers or serving discovery, and sometimes they are even on

vacation.  For that reason, the safe-harbor provision of Fed. R. Civ. P. 11(c)(2) gives a plaintiff 21 days after being served with a motion for sanctions to withdraw her complaint.  Messerli suggests no reason why it should be permitted to use § 1927 (or any other source) to effectively circumvent that safe harbor.

Hartz received Weber's letter on Tuesday, February 2.[2]  Hartz emailed Weber about the letter on Wednesday, February 3, and told Weber that he would be out of the office until Monday, February 8.  On February 8, Hartz told Weber again that, before deciding whether to dismiss Bendickson's lawsuit, he would need to listen to the recording of her conversation with Messerli.  Rather than simply providing a copy of that recording—and giving Hartz a few days to listen to it and discuss it with his client—Weber filed the lawsuit in state court and removed the lawsuit to federal court.

Messerli's claim that Hartz "forc[ed] the Defendant to file a removal" is thus plainly untrue.  ECF No. 8 at 6.  No one forced Messerli to run to court on February 8.  At that point, Messerli still had more than two weeks to decide whether to remove the action to federal court.  There is absolutely no reason why it could not have continued to work with Hartz to try to resolve the case.

_____

[2]In the first of his February 3 emails to Weber, Hartz said:  "I received your letter dated January 28, 2016 regarding the *Bendickson* action yesterday."  ECF No. 7-2 at 3.

Messerli's main argument is that it provided such overwhelming authority to Bendickson that her attorney should have instantly recognized that voluntary dismissal of her lawsuit was "inevitable." ECF No. 8 at 7. That, too, is plainly untrue.

Messerli's first defense was that it did not need written authorization from Bendickson because EFTA excludes from the definition of "electronic fund transfer" any transfer of funds that is "originated by check." The only authority that Messerli cited in support of its argument that the practice in which it engaged with Bendickson fell within this exclusion was the *Ferrier* case, which, according to Messeri, "soundly rejected" Bendickson's claim and held that "check-by-phone paper checks are not EFTs." ECF No. 8 at 5. But *Ferrier* was an unpublished decision of a district-court judge in California; the decision was not binding on this Court or any other court. Moreover, the *Ferrier* decision does not make clear whether the checks at issue in that case were "check-by-phone paper checks." And most importantly, the *Ferrier* decision says *not one word* about the issue raised by Bendickson—specifically, whether a debt collector can circumvent the written-authorization requirement of EFTA by simply printing out "checks" drawn on the debtor's bank account.

In *Ferrier*, the debt collector argued that the payments that it had received from the debtor "'were made by paper checks drawn on her account'" and therefore were not "electronic fund transfers" for purposes of EFTA. In its order, the court did not make

clear whether those checks had been created by the debtor or the debt collector.  That issue was irrelevant, as the only issue addressed by the court was whether an affidavit filed by the debt collector had a sufficient foundation.  *Ferrier*, 2015 WL 429737, at *3.  It is absurd to argue, as Messerli does, that Bendickson should be sanctioned because she did not immediately dismiss her complaint after Messerli drew her attention to a single, unpublished, district-court decision that did not even address the form-vs.-substance argument that Bendickson intended to make.

The second defense asserted by Messerli was that, even if it *did* need written authorization from Bendickson, she authorized the transfers in a telephone conversation, Messerli recorded that telephone conversation, and such a recording meets the "written authorization" requirement of 15 U.S.C. § 1693e(a).  In support of this argument, Messerli again relied on a single authority:  the compliance bulletin issued by the CFPB.  There were at least four problems with Messerli's defense:

First, the Bulletin was not binding on this or any other court.  Indeed, the Bulletin *says* that it is not binding on anyone.  The Bulletin describes itself as "a non-binding general statement of policy" that merely sets forth "considerations relevant to the CFPB's exercise of its supervisory and enforcement authority."  Bulletin at 5.

Second, EFTA clearly provides that "[a] preauthorization electronic fund transfer from a consumer's account may be authorized by the consumer only *in writing* . . . ."

15 U.S.C. § 1693e(a) (emphasis added).  The CFPB's assertion that an *oral* authorization

is "in writing" if that *oral* authorization has been recorded is difficult to square with the

language of the statute.  Certainly, a litigant could reasonably argue that the CFPB's

position is inconsistent with the language of EFTA.

Third, CFPB's position was highly qualified.  CFPB said that a recorded  oral

authorization could meet EFTA's written-authorization requirement, but only "if the E-

Sign Act requirements for electronic records and signatures are met" and if the

recording of the conversation with the debtor was "conducted in accordance with

applicable State laws."  Bulletin at 3 (footnote omitted).  Messerli never identified the

requirements of the E-Sign Act and Minnesota law, much less asserted that it had

complied with those requirements when it recorded its call with Bendickson.

And finally, Messerli's defense depended entirely on its assertions that (1) it

recorded its conversation with Bendickson; (2) it retained a copy of that recording; and

(3) it fairly and accurately described that recorded conversation.  But Hartz did not have

to take Weber's word for any of this; indeed, Hartz arguably would have violated his

ethical obligations to his client if he had dismissed her lawsuit without doing anything

to confirm Weber's representations.  Hartz made an eminently reasonable request of

Weber:  Please let me listen to the recording to verify that what you have told me about

the recording is true before forcing me to decide whether to dismiss my client's lawsuit.

In response, Weber should have provided a copy of the recording.  Instead, he ran to court.

In sum, it is absurd to argue, as Messerli does, that Bendickson should be sanctioned because she did not immediately dismiss her complaint after Messerli drew her attention to a single, dubious, highly qualified, non-binding bulletin issued by the CFPB— especially when Messerli unreasonably refused to allow her attorney to listen to the recording that was the linchpin of its defense.

For these reasons, Messerli's motion for attorney's fees is denied.[3]  Indeed, if the Court were forced to sanction anyone, the Court would sanction Messerli, not Bendickson.  It is probably true, as Messerli repeatedly points out, that it acted within its rights in refusing to provide the recording to Hartz and in running to court.  But the question of what a lawyer has a *right* to do is not the same as the question of what a lawyer *should* do.  This Court expects that members of its bar will treat each other civilly and make every effort to resolve disputes before inflicting costs on their own clients, their opponents, and the Court.  Messerli's behavior fell well short of this expectation.

---

[3]The parties also dispute to what extent Messerli is entitled to recover its costs. But the Clerk of Court entered a cost judgment in favor of Messerli on May 3, 2016 [ECF No. 13], and no party sought review of that judgment under Local Rule 54.3(c)(3).  The Court will therefore not disturb the judgment.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion for attorney's fees [ECF No. 6] is

DENIED.

Dated:  August 16, 2016                          s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge